AO 91 (Rev 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOSEPH DAVID CALTAGIRONE | ) | Case No. **8:18MJ1407 TGW** |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ April 11, 2018 _____ in the county of _____ Hillsborough _____ in the _____ Middle _____ District of _____ Florida _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) and 18 U.S.C. § 842(j) | Possession of an unregistered destructive device and Unlawful storage of an explosive material. |

This criminal complaint is based on these facts:

Please see the attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Jeffrey Burt, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 12 2018
_____
*Judge's signature*

City and state: _____ Tampa, Florida _____

THOMAS G. WILSON, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Jeffrey A. Burt, being duly sworn, do hereby depose and state:

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and I have been since February of 2005. I am currently assigned to Tampa Group III, which investigates violent crime as it relates to illegal use and possession of firearms and explosives.  I have received specialized training, ranging from advanced undercover techniques to identifying the place of manufacture for various firearms and ammunition.

2.    Prior to becoming a Special Agent with ATF, I was employed as a Special Agent with the Florida Department of Law Enforcement (FDLE) for five years; an investigator with the Florida Department of Insurance/State Fire Marshal's Office for one year; and as a Police Officer with the Tallahassee Police Department for four years.

3.    As a Special Agent with the ATF, I am a federal law-enforcement officer as described in 18 U.S.C. § 2510(7).  As such, I am responsible for investigating and enforcing violations of federal law.  I am also authorized to investigate violations of the laws of the United States, and to

execute arrest and search warrants issued under the authority of the United States.

4.       As a Special Agent with ATF, I have completed Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center, which certified me as a criminal investigator and special agent. I have also been directly involved in federal investigations and have assisted other agents in conducting investigations, including joint, interagency investigations. I have conducted physical surveillance, executed search warrants and reviewed recordings, including recordings of individuals involved with unlawful firearms possession. I have interviewed witnesses, victims, and worked with cooperating individuals. While employed with ATF, I have investigated, made arrests, and assisted in the investigation of numerous criminal matters related to violations of federal firearms laws, including violent crimes, and explosive investigations. I have made arrests and conducted searches pertaining to these types of investigations.

### SUMMARY

5.       I submit this affidavit in support of an application for a criminal complaint and arrest warrant for Joseph David CALTAGIRONE. This affidavit does not set forth every fact gathered in this investigation; rather, it sets forth facts sufficient to establish probable cause to believe that Joseph

David CALTAGIRONE possessed an unregistered firearm, that is, a destructive device, in violation of 26 U.S.C. § 5861(d), and unlawfully stored an explosive material, in violation of 18 U.S.C. § 842(j). I am requesting that this Court issue an arrest warrant for Joseph David CALTAGIRONE based upon the following information that I have learned in my official capacity, by firsthand observations, as well as by receiving information from other law-enforcement officers involved in this investigation.

## **PROBABLE CAUSE**

6.      On April 11, 2018, members of the Tampa Police Department ("TPD") Bomb Squad were conducting training at 2611 North 12th Street, Tampa, Florida 33605. At approximately 4:20 p.m., they heard a loud explosion. Members of the TPD Bomb Squad left the building that they were in and saw a greyish-white smoke plume traveling from north to south above the backyard of 1018 East Columbus Drive, Tampa, Florida 33605. Members of the TPD Bomb Squad entered the backyard of that address in an attempt to determine the location of the explosion and to determine if anyone had been injured. The TPD Bomb Squad could smell what they recognized to be burnt, black powder. The TPD Bomb Squad did not see anyone in the backyard, however, they saw a PVC-pipe end cap on the ground in the north-east portion

of the yard near a fence. That fence lines the north perimeter for 1018 East Columbus Drive, Tampa, Florida 33602.

7.    TPD officers then canvased the neighborhood. Officers traveled to the residences that border the rear of 1018 East Columbus Drive, Tampa, Florida 33605.  One TPD officer spoke with a resident who resides at 1017 East 17th Avenue, Tampa, Florida 33605. The resident identified herself as Bonnie Kay GARCIA. GARCIA stated that she had heard an explosion and looked out her east window toward 1019 East 17th Avenue, Tampa, Florida 33605, where she observed two white males who she knew to be "Joseph" and "David," residents of 1019 East 17th Avenue, Tampa, Florida 33605. GARCIA saw "Joseph" and "David" run into the rear door located on the southwest side of 1019 East 17th Avenue, Tampa, Florida 33605.

8.    Upon the arrival at 1019 East 17th Avenue, law-enforcement officers spoke with a resident named Mary CALTAGIRONE. She said that her son, Joseph CALTAGIRONE, and his friend were upstairs in the apartment. The apartment was accessible through the interior of the residence, or the exterior southwest door. The exterior door is the same door described by GARCIA.

9.    Members of the TPD Bomb Squad knocked on the southwest exterior door for 1019 East 17th Avenue. Two males answered the door and

4

came out of the residence. They identified themselves as Joseph

CALTAGIRONE and Mark David RUDE Jr. During this interaction,

CALTAGIRONE spontaneously stated that he had been making model

rockets.

      10.    TPD officers, concerned at the time about public safety,

interviewed CALTAGIRONE. CALTAGIRONE stated that he was making

rocket fuel with potassium nitrate and sugar. He said that he had tried to set

off a model rocket and that it exploded. He stated that no hazards were inside

the residence. He also said that he had homemade black powder, potassium

nitrate and sugar. He further stated that pipe pieces were inside the residence,

but he added that they were not constructed or filled with any explosives or

hazards. He said that when the police came around the neighborhood, he got

nervous and moved his black powder and rocket fuel chemicals downstairs

into his mother's sewing room (southeast room) on the first floor. Finally, he

indicated that the black powder and other chemicals were in Tupperware

containers in the sewing room.

      11.    Concerned for public safety and in light of the exigent

circumstances, TPD bomb technicians searched the residence to determine if

any obvious hazards were present. During a search of the first floor sewing

room (located in the residence's southeast corner), law-enforcement officers

saw several containers with an unknown, powdery substance in them. They saw a large container with an unknown, white powder inside, labeled as "KNO3." Based on my training and experience, I know that KNO3 is the chemical formula for potassium nitrate. They also saw a container with an unknown, dark material inside labeled as "BP W/ Milled KNO3." Based on my training and experience, I believe that BP is a reference to "black powder." Officers also found a box containing different improvised, explosive-device components, including: a piece of PVC pipe with a plugged end, a hobby fuse, and precursor chemicals labeled as 3 lbs. potassium nitrate, 1 lb. airfloat charcoal, and 1 lb. sulfur. Based on my training and experience, potassium nitrate, charcoal, and sulfur are precursor chemicals utilized in the manufacturing of homemade black powder. A red solo cup was sitting on the floor next to the aforementioned chemicals and containers. Inside the red solo cup was a white PVC pipe with end caps on each side. The pipe was arranged vertically inside the cup. An x-ray of the cup and PVC pipe revealed an unknown powder inside the pipe.

12.   Law-enforcement officers also searched the upstairs of the residence. There, they discovered other precursor chemicals, labeled as "Tannerite." Based on my training and experience, Tannerite is a binary exploding target material (this means that it must be mixed with another

material to become explosive in nature), consisting of ammonium nitrate and aluminum powder. Based on my training and experience, I know that when the ammonium nitrate and aluminum powder are mixed, they form an explosive material that can be detonated.

13.   TPD officers then took CALTAGIRONE to the Tampa Police Department District Three Interview room. Post *Miranda*, CALTAGIRONE waived his rights and made several admissions. CALTAGIRONE said that he had made a rocket that day (referring to April 11, 2018), using a one-inch-by-six-inch piece of schedule 40 PVC pipe. CALTAGIRONE put clay in one end of the pipe and glued a PVC end cap over this end. He drilled the PVC end cap and inserted a piece of fuse in order to ignite the rocket. He filled the pipe approximately three quarters full with potassium nitrate, charcoal, and sulfur. He crumpled up a piece of aluminum foil and stuffed it into the pipe to separate the filler from the second end cap, which he had glued on the end of the pipe. He attached a guide rod to the side of the pipe by gluing a syringe to the side of the pipe to hold the guide rod. When he lit the fuse, the rocket never went up and it exploded. CALTAGIRONE said that he had previously constructed the pipe that was sitting in the downstairs sewing room (southeast room) about two weeks ago. The pipe contained mixed Tannerite, with an improvised blasting cap.

14.     Based on my training and experience, filling PVC pipes with explosive material is conduct consistent with manufacturing what is commonly referred to as a "pipe bomb." Moreover, PVC piping with end caps attached to both sides appears to be inconsistent with hobby rocketry.

15.     On April 12, 2018, at approximately 1:05 a.m., TPD officers executed a state search warrant on the residence located at 1019 17th Ave., Tampa, Florida. There, they discovered and seized various pieces of evidence, including found the following items:

- 1 ½ x 5 inch PVC pipe with wire and suspected tannerite
- 8 shot ring caps for cap gun
- Gray unknown powder
- Black unknown powder
- White unknown powder
- Yellow unknown powder
- Green hobby fuse

The list above represents only some of evidence located within the residence. A complete list has been documented in the Tampa Police Department search warrant log.

16.     As stated above, based on my training and experience, I have learned that Tannerite is a binary exploding target material, consisting of ammonium nitrate and aluminum powder. Potassium nitrate, charcoal, and sulfur recovered from the residence are also precursor chemicals that can, and

8

often are, used to create explosives. The items and materials recovered in CALTAGIRONE's residence meet the definitions of a "firearm" under 26 U.S.C. §§ 5861(d) and 5845(a), which incorporate a "destructive device" as defined by section 5845(f). Based on the discovery of these materials and on CALTAGIRONE 's admission that he had constructed the PVC pipes containing the explosive material, probable cause exists that CALTAGIRONE had a combination of parts designed or intended for use in converting any device into a destructive device and  from which a destructive device may be readily assembled.

17.    Moreover, under the regulations promulgated by the Attorney General through ATF, *see* 27 C.F.R. § 555.201, et seq., and the laws and ordinances of Tampa, Hillsborough County, Florida, Tannerite (ammonium nitrate and aluminum powder) is an explosive material that could not lawfully be stored in CALTAGIRONE's residence.

18.    On April 11, 2018, a record search showed no registration of any destructive devices by CALTAGIRONE in the National Firearms Registration and Transfer Record as required by Title 26, of the United States Code.

## CONCLUSION

19.     Based upon the foregoing facts, there is probable cause to believe

that CALTAGIRONE possessed an unregistered firearm, that is, a destructive

device, in violation of 26 U.S.C. § 5861(d), and also that he unlawfully stored

an explosive material, in violation of 18 U.S.C. § 842(j).


 

Jeffrey Burt, Special Agent
Bureau of Alcohol, Tobacco, Firearms
& Explosives


SUBSCRIBED and SWORN to before me

this 12th day of April, 2018.


THOMAS G. WILSON
United States Magistrate Judge