UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE No. 8:18-cr-460-T-02AEP

JOSEPH DAVID CALTAGIRONE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Maria Chapa Lopez, United States Attorney for the Middle District of

Florida, and the defendant, Joseph David Caltagirone, and the attorney for

the defendant, Tamara E. Theiss, mutually agree as follows:

## A.  **Particularized Terms**

### 1.  Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information.  Count One charges the defendant with possession of an

unregistered destructive device, in violation of 26 U.S.C. § 5861(d).

### 2.  Maximum Penalties

Count One carries a maximum sentence of 10 years'

imprisonment, a fine of $250,000, a term of supervised release of not more

than 3 years, and a special assessment of $100 per felony count. With respect

to certain offenses, the Court shall order the defendant to make restitution to

Defendant's Initials _____

any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First: the defendant possessed a firearm, as defined in 26 U.S.C. § 5845;

Second: the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record; and

Third: the defendant knew of the specific characteristics or features of the firearm that made it subject to registration under the National Firearms Registration and Transfer Record.

4. Indictment Waiver

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the



United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7. <u>Sentencing Factor Recommendation - §2K2.1(b)(3)(A).</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant's offense level not be enhanced under the specific-offense characteristic detailed in U.S.S.G. §2K2.1(b)(3)(A).

The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.  Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot

and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9. <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation

qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

10. Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

11. Cooperation - Responsibilities of Parties

a. The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However,

the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights,

as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books,

papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

12.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 26 U.S.C. § 5872, 28 U.S.C. § 2461(c) and 49 U.S.C. § 80303 whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea

Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their

connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

13. <u>Abandonment of Property - Firearms and Ammunition</u>

The United States of America and defendant hereby agree that any firearms and/or destructive devices as defined in 18 U.S.C. § 921 or 26 U.S.C. § 5845(a), seized from defendant and currently in the custody or control of the Bureau of Alcohol, Tobacco, Firearms and Explosives, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or 26 U.S.C. § 5872, and that the firearms and/or destructive devices constitute evidence, contraband, or fruits of the crime to which he has pleaded guilty. As such, defendant hereby relinquishes all claim, title and interest he has in the firearms and/or destructive devices to the United States of America with the understanding and consent that the Court, upon approval of this agreement, hereby directs the Bureau of Alcohol,

Tobacco, Firearms and Explosives, or other appropriate agency, to cause the firearms and/or destructive devices described above to be destroyed forthwith without further obligation or duty whatsoever owing to defendant or any other person.

As part of the plea agreement in this case, defendant in this case hereby states under penalty of perjury that he is the sole and rightful owner of the property, and that defendant hereby voluntarily abandons all right and claim to one pipe bomb constructed with PVC piping, 1 ½ x 5 inch PVC pipe with wire and tannerite, a Green hobby fuse, a container with dark material labeled "BP W/ Milled KNO3," a container with white powder labeled "KNO3," a box containing different improvised, explosive-device components (including a piece of PVC pipe with a plugged end, a hobby fuse, and precursor chemicals labeled as 3 lbs. potassium nitrate, 1 lb. airfloat charcoal, and 1 lb. sulfur,) 8 shot ring caps for cap gun, and rocket fins.

The defendant also voluntarily abandons all right and claim to: a Winchester 12 shotgun (SN:1583081), a Remington Arms Company, Inc. shotgun (SN:25703), a Fabrica DE Armas S.E.A.M rifle (SN:2G-4863), a Winchester 12 shotgun (SN:1661383), a Winchester 94 rifle (SN:3623833), a Remington Arms Company, Inc. 11 shotgun (SN:330788), a Ruger 10/22 rifle (SN:112-73608), an Inland Manufacturing, LLC M1 1944 rifle (SN:791597), a

Winchester 190 rifle (SN:R201348), a Winchester rifle (SN:182057), a

Remington Arms Company Inc. 552 rifle (SN:237580), a Smith & Wesson

M&P 9 Shield pistol (SN:HMF5146), a Smith & Wesson 19 revolver

(SN:69K0597), a Smith & Wesson 17 revolver (SN:18K8356), a High

Standard Double Nine revolver (SN:M020918), a Firearms International

Corp. Western Duo firearm, a Ruger Security Six revolver (SN:151-73316), a

Colt Diamondback revolver (SN:R22275), a Colt Police Positive revolver

(SN:54731M), and 87 rounds of assorted ammunition.

**B.**   **Standard Terms and Conditions**

1.   <u>Restitution, Special Assessment and Fine</u>

The defendant understands and agrees that the Court, in addition

to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution

to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663,

including restitution as to all counts charged, whether or not the defendant

enters a plea of guilty to such counts, and whether or not such counts are

dismissed pursuant to this agreement.  The defendant further understands that

compliance with any restitution payment plan imposed by the Court in no

way precludes the United States from simultaneously pursuing other statutory

remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States

Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7. Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to

appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges

defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials _JDC_          20

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

On April 11, 2018, Tampa Police Department ("TPD") Bomb Squad Officers were training at a facility on North 12th Street, Tampa, Florida. At approximately 4:20 p.m., they heard a loud explosion. Members of the TPD Bomb Squad left the building where they were training and saw a greyish-white smoke plume traveling from north to south above a backyard located near the corner of North 12th Street and East Columbus Drive, Tampa, Florida 33605, in the Middle District of Florida. This location is in a densely populated, residential neighborhood where homes sit in close proximity to each other. When TPD bomb squad officers entered the backyard of that address, they smelled what they recognized to be burnt powder, saw a blast crater, and found a PVC-pipe end cap on the ground in the northeast portion of the yard near a fence.

TPD Officers then canvassed the neighborhood. One resident stated that she had seen her neighbors "Joseph" and "David" running into a nearby

house. Police arrived at that house—later identified as Caltagirone's residence—and encountered the defendant, Joseph David Caltagirone, and his associate, M.D.R. Caltagirone stated that he and M.D.R. had been making rockets and had set off a rocket, which exploded.

TPD bomb technicians searched Caltagirone's house. During their search, law-enforcement officers saw several containers that contained powdery substances. They discovered a large container with white powder inside, labeled as "KNO3." KNO3 is the chemical formula for potassium nitrate. They also saw a container with a dark material inside, labeled as "BP W/ Milled KNO3." Officers found a box containing various components, including: a piece of PVC pipe with a plugged end; a hobby fuse; and precursor chemicals labeled as 3 lbs. potassium nitrate, 1 lb. airfloat charcoal, and 1 lb. sulfur. Potassium nitrate, charcoal, and sulfur are precursor chemicals utilized in the manufacturing of homemade black powder.

Law-enforcement officers also discovered a red solo cup on the floor next to the above-mentioned chemicals and containers. Inside the red solo cup, officers found a white polyvinyl chloride (PVC) pipe with end caps on each side. The pipe was arranged vertically inside the cup. An x-ray of the cup and PVC pipe revealed powder inside the pipe. Law-enforcement officers also searched the upstairs of the residence. There, they discovered Tannerite.

Tannerite is a binary exploding target material consisting of ammonium nitrate and aluminum powder.

TPD officers then took Caltagirone to the Tampa Police Department. Caltagirone waived his *Miranda* rights and made several statements. Caltagirone stated that he had constructed two devices: a rocket/missile device that had exploded in the backyard and the device discovered inside a red solo cup. Regarding the rocket/missile device, he stated that he had used a one-inch-by-six-inch piece of schedule 40 PVC pipe. He put clay in one end of the pipe and then glued a PVC end cap over that end. He drilled the PVC end cap and inserted a piece of fuse in order to ignite the rocket. He filled the pipe approximately three quarters full with potassium nitrate, charcoal, and sulfur. He crumpled up a piece of aluminum foil and stuffed it into the pipe to separate the filler from the second end cap, which he had glued on the end of the pipe. He then attached a guide rod to the side of the pipe by gluing a syringe to the side of the pipe to hold the guide rod. When he lit the fuse, the rocket exploded and never traveled vertically.

A Destructive Device Determination conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives concluded that the rocket/missile device, a rocket motor, was constructed using a length of PVC pipe, which was sealed at one end with a PVC end cap and contained a quantity of

explosive powder identified through laboratory analysis as a nitrate explosive mixture. The other end had been plugged with clay and an improvised venturi. The end cap had been sealed to the pipe using a PVC-based adhesive. According to the report, the absence of any electrical or mechanical firing system, taken with statements made by the device maker, indicate that a length of burning-type fuse was used to initiate the explosive powder. Lighting the fuse of the rocket motor, after a delay, had ignited the explosive powder, causing the device to explode. This explosion projected PVC fragments at high velocities in all directions.

The second device that Caltagirone had designed and constructed, found inside a red solo cup, was a destructive device. The device had been constructed using a length of PVC pipe that was sealed at each end with PVC end caps. The ends had been secured in place with a PVC-based adhesive. The pipe contained an explosive mixture identified through laboratory analysis as a mixture of prilled ammonium nitrate and aluminum, commonly known as Tannerite. One of the end caps was modified by having a hole drilled through its center face. An improvised initiator had been constructed using two lengths of multi-strand wire with a smaller diameter length of single-strand wire connected between the exposed ends of the multi-strand wire. The wire was then placed into a length of plastic straw that contained a small quantity of an

explosive mixture identified through laboratory analysis as a chlorate/perchlorate explosive mixture. The initiator had been passed through the hole in the end cap and secured in place with an adhesive. Applying electrical current to the wires would have caused the bridge-wire to heat up and ignite the explosive powder in the straw, causing an explosion. This explosion could have caused the explosive mixture in the pipe (Tannerite) to explode, which, in turn, would have projected PVC fragments at high velocities in all directions.

Caltagirone knowingly designed, constructed, and possessed at least two, completed improvised devices—(1) the rocket motor that he and M.D.R. had detonated, which was not a destructive device under 26 U.S.C. § 5845(f)(3), and, (2) a device discovered in a red solo cup, which was a destructive device under 26 U.S.C. § 5845(f)(3). Caltagirone knew that the device discovered in a red solo cup had been engineered to explode. He knowingly possessed combinations of parts designed and intended for use in converting any device into a destructive device and from which a destructive device could have been readily assembled. Although no evidence has been uncovered suggesting that Caltagirone specifically intended to harm anyone, the device discovered inside a red solo cup in Caltagirone's home, as designed, did not have any legitimate social value or use other than as a weapon. The

device was not registered to Caltagirone or to M.D.R. in the National Firearms Registration and Transfer Record.

12. Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13. <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this _7th_ day of _December_, 2018.


MARIA CHAPA LOPEZ
United States Attorney


_[signature]_

Joseph David Caltagirone
Defendant

_[signature]_

Francis D. Murray
Assistant United States Attorney

_[signature]_

Tamara E. Theiss
Attorney for Defendant

_[signature]_

Amanda L. Riedel
Assistant United States Attorney
Acting Chief, Special Victims Section